1831.

MARSH
v.
HAGUE.

---

Thomas Marsh and Sarah his wife *vs.* Hague and another,
executors of Marsh, deceased.

---

When a recital in a will manifests an intention to make a present bequest and
the words of actual bequest are omitted by inadvertence or mistake, the
words will be supplied ; and the recital will amount to an implied bequest,
Therefore :

Where a testator gave "unto my cousin S. M. daughter of my uncle D. O.
"1000 dollars more than the equal part above mentioned to my uncle D.O's
"children," and nothing was "above mentioned" to them, but there was a
a prior clause which gave to the children of seven uncles named (not nam-
ing D. O. among them) $5,000 each : *It was held,* that the children of D. O.
each took five thousand dollars by implication.

Grand children and great grand children do not take as "children," except
from necessity and where the will would be inoperative, or where the tes-
tator has shown he did not intend to use the term according to its actual
meaning, but in a restricted sense. They may sometimes be let in under a
liberal construction of the word "children."

As a general rule, legacies are payable in one year, even though assets are not productive or the executors have not reduced the property into possession; and there is no exception on the ground of a legatee's not being in a situation to receive or omitting to demand.

*1831.*

MARSH
*v.*
HAGUE.

THE question in this cause involved the construction of the will of John Fleetwood Marsh, deceased, in some very important points.

*October 24, 1831.*

*Will.*
*Construction.*
*Interest on Legacy.*

The complainants, Sarah Marsh and Mary Hughes, claimed to be legatees under the will each of the sum of five thousand dollars, besides the sum of one thousand dollars given to Sarah Marsh and which had been paid to her.

The defendants were the executors; and they admitted assets in their hands abundantly sufficient to discharge such legacies, provided the complainants were entitled to receive them.

The claim arose out of some of the clauses of the will; and the following was one:

" First, I give and bequeath unto all the children that shall " be living of my late uncles Adrian Marsh, Robert Styles and "—— Simonds of Datchet Bucks, John Marsh of Acton, " Middlesex, —— Perryman of Downey, Berks, and William " Marsh of Bray, to each of the above mentioned persons five " thousand dollars each."

After the bequest of a number of other legacies, the testator added:

" Also, I give and bequeath unto my cousin Sarah Marsh, " daughter of my uncle David Ogilvie, one thousand dollars " more than the equal part above mentioned to my uncle David " Ogilvie's children.

" Also, to my cousin Barnard Bayley of Philadelphia, I be- " queath one thousand dollars, in addition to his share in the " family of my uncle Adrian Marsh mentioned above."

He then disposed of some further sums in legacies; and concluded with:

" The rest and residue I give and bequeath one-third part " to the treasurer of the Bible Society above mentioned for

" the use of the society.  The other two-thirds to the grand
" children and their children share and share alike of all my
" uncles above mentioned."

This will was made in June one thousand eight hundred
and twenty-four; and the testator died in September one
thousand eight hundred and twenty-eight.

At the time of making the will the complainants, Sarah
Marsh and Mary Hughes, were the only children surviving
among all the children of the testator's uncles.  They were
the daughters of the uncle David Ogilvie deceased.

It was admitted, however, that there were grand children
and other descendants of the uncles named in the will, to the
number of three or four hundred, who were entitled to come
in as residuary legatees.  Barnard Bayley, the cousin of the
testator, was one of that number, he being the great grandson
of Adrian Marsh.

Mr. *Jesse Hoyt*, for the complainant.

The general and undisputed rule in relation to the construc-
tion of a will is, that the intention of the testator is to be carried
into effect.

In order to ascertain this intention, the whole will is to be
taken together; and every part of it is to be preserved, if
possible, in giving it a construction.  The principal question
in the case is: whether the children of the testator's uncle
David Ogilvie, namely, the complainants, Sarah Marsh and
Mary Hughes, each take the sum of five thousand dollars as
a bequest under this will?

The first clause of the will is a bequest to " all the children
" that shall be living of my late uncles, &c. five thousand dollars
" each."  If David Ogilvie had been enumerated here as an
uncle, there would have been no room to doubt.  Is not the
doubt removed, by looking at the subsequent clause of the will
which " bequeaths unto Sarah Marsh, daughter of my uncle
" David Ogilvie one thousand dollars more than the equal part
" above mentioned of my uncle David Ogilvie's children?"
This certainly shows that the testator supposed he had, by

a prior part of the will, put his uncle David's children on the same footing as the children of the uncles he had named; or, in other words, that he supposed he had named his uncle David's children. It cannot be accounted for in any other way than by the reason assigned in the bill and in substance admitted in the answer, to wit, a mistake in copying the former will. There are some analogous cases upon this subject. In *Smith* v. *Fitzgerald*, 3 *Ves. & B.* 7, it was said, by the master of the rolls, " that cases were cited to show that the recital of a " gift, though nothing had in fact been given, would amount to " a gift ;" and also, " without denying that the recital of a gift, " as antecedently made, may amount to a gift, the court ought " to see very clearly that there is nothing in the will to which " the recital can refer, before it is turned into a distinct bequest." Apply this case to ours :—this surely is as good as a recital ; and there is nothing to rebut the effect of it. In *Garvey* v. *Hibbert*, 19 *Ves.* 125, there was a bequest to three children of Deborah Duval, wife of Dr. Benjamin Duval, of the sum of six hundred pounds each of lawful money of Great Britain; and the master of the rolls held, that each were entitled, that is to say, all four to six hundred pounds. He did this on the authority of *Tompkins* v. *Tompkins*, cited from the Register's book; and see *Scott* v. *Fenhoulet*, 2 *Bro. C. C.* 86; and *Stebbins* v. *Walker, ib.* 85. The ground for the decision was, that it was a mere slip in expression. The meaning was, all children ; and the court, conceiving the intention to be to give to each child so much, strikes out the specific number. Our case is stronger than " a slip in expression." If we strike out the names of the uncles, and read " all his uncles," the case would be exactly analogous. This makes our case parallel with the cases cited.

The error of leaving out the name of the uncle David in the part of the will where the testator's uncles are enumerated, is very apparent.

It is not necessary that a legatee be named in a will. If he be otherwise clearly described, it is sufficient: *Bartlett* v. *King*, 12 *Mass.* 537.

This construction is aided, we think, by the terms used in

*1831.*

MARSH
*v.*
HAGUE.

See also,
*Harrison* v.
*Harrison*, 1
*Russ. & M.*
72.

23

the bequest of the residue of the estate. After disposing of one-third of the residue, the testator says, " the other two-" thirds to the grand children and their children share and share " alike of all my uncles above mentioned." The children of the complainants would take, as the grandfather David Ogilvie had been " above mentioned" in the clause relating to the one thousand dollars to Sarah Marsh. There is no pretence, we think, for saying the children of the uncle David Ogilvie were to be excluded. The cases before cited from Vesey and Brown are in point. There are also other cases; and they may be found in Roper on Legacies, under the chapter of Description of Legacies.

If it should be suggested, that the complainants take only five thousand dollars, on the ground that the bequest was to the uncles as the " above mentioned persons :" we say in answer, that the words " above mentioned persons" apply to the antecedent words "all the children," and it is " each" of all the children who is to have five thousand dollars, But the sentence when taken together is still stronger: it is " all the children that shall be living." The uncles were all dead at the time of making the will. It will not be pretended the bequest was to them.

The complainants are entitled to interest on the legacy of five thousand dollars each; and Sarah Marsh is entitled to *interest* on the one thousand dollars legacy. A legacy draws interest after it becomes payable, though it is not demanded by the legatee: *Glen* v. *Fisher*, 6 *J. C. R.* 33; *Birdsall* v. *Hewlett*, 1 *Paige's C. R.* 32. The legacy is payable in one year after the death, unless some other time is specified by the will: *Wood* v. *Penoyer*, 13 *Ves.* 333, 334; Executors of *Cogdell* v. *The widow* ——, 3 *Desau*, 387.

Costs must follow the recovery, as the case did not justify any hesitation on the part of the executors in paying the legacy.

Mr. *Peter W. Radcliff*, for the defendants.

The residuary legatees ought to have been made parties.

But this is a point I do not particularly press. Still, however, I do not concede it; but submit the question to the Vice-Chancellor.

The bequest under which the plaintiff claims does not extend to the children of David Ogilvie. It is, "to all the children that "shall be living of my late uncles Adrian Marsh" and others, naming them, in all, seven in number, David Ogilvie is not here mentioned, and, "*expressio unius est exclusio alterius.*" If the names of the uncles be struck out, so as to leave the legacy to all the children of his late uncles, it might let in we know not how many! The ground of the complainants' claim is, the bequest to Sarah Marsh of one thousand dollars more than the equal part above mentioned to the uncle David Ogilvie's children. What "equal part above mentioned?"— Why not stop with the "one thousand dollars" and reject what follows as insensible or as a mistake? The claim, then, is founded upon an implied bequest made out by supposing an unintentional omission. The case before the court is not a dispute about subject matter, which here is money; nor as to satisfying the bequest itself, so as to make it operate; nor is it upon an ambiguity in describing a legatee : but a mere mistake committed by omission. It is the same thing, then, as leaving the name of a legatee blank; and if so, the court cannot fill it up. For the general doctrine of the law, I would refer to 2 Roberts on Wills, 12 to 32, and n. 3, on p. 29, and the cases there cited. Parol evidence is inadmissible to explain, vary or enlarge the words of a will, except in the case of a latent ambiguity or to rebut a resulting trust : 6 *T. R.* 676 : *Mann* v. *Mann*, 1 *J. C. R.* 251 ; 14 *J. R.* in error; 2 *Com. Dig.* 438, *Chancery* 3, *A. Devise*; 3 *ib.* 462, *Devise n.* 25 ; *ib.* 410—412, *Devise K.* also *n.* 2, 3.

If the plaintiffs are entitled at all, they are to have but five thousand dollars jointly and not that sum each of them. Suppose there were eight uncles and each had five children : in such a case the five thousand dollars would have to be multiplied by forty, which must give the enormous sum of two hundred thousand dollars! The clause itself which refers to David Ogilvie's children, if intelligible at all, shows that the testator had families in mind and not individuals. And this

appears more strongly when applied to the clause relating to the bequest to Barnard Bayley " in addition to his share in the "family" of Adrian Marsh ; as well as in the residuary clause, where he shows he knows the force of the terms "share and " share alike."

No interest can be allowed on the legacy of one thousand dollars : the defendants not being bound to remit the legacy over the water and there being no default after the appointment of any agent here.

*It* has been settled, that if a man devises one hundred pounds to one of full age, without saying at what time, he shall have interest only from the time the bill is filed (although, it seems, it would be otherwise as to an infant ;)`also, that a man of full age shall not have interest for a legacy, until the bill is exhibited, if the time of payment is not mentioned by the will: 2 *Com. Dig.* 548, *Chancery* 3, *y.* 6 ; *Ib.* 3, *y.* 9.

The complainants must, at all events, pay the costs : for, if they are not entitled, then they must do so as a matter of course ; and if they are entitled, it was their misfortune, and not the act of the residuary legatees, that their rights were subjected by the will to such questions as made it proper for the executors to come here for protection.

*December* 19.    THE VICE-CHANCELLOR.    By the first clause in the will of the testator, all the children who should be living of his late uncles, naming seven, are constituted legatees.    The time when they should be living in order to ascertain the persons to take is, no doubt, the death of the testator.

Whether the term " children," thus used, is to be confined strictly to children or extended so as to embrace grand children and other descendants of uncles, may be a question necessary to consider ; but without reference to it at present, it is first to be ascertained whether the children of David Ogilvie are included ?

He is not named among the seven uncles ; and if the clause which mentions them stood alone, his children could not be permitted to take.    But the whole context is to be looked at, in order to ascertain its meaning ; and if from the whole will

and by fair implication, without violating any rules of law, the intention to include the children of David Ogilvie, in the class of legatees for five thousand dollars each, is clearly percepti- ble, then it is the business of the court to carry such intention into effect.

It seems manifest, from a subsequent clause where he gives to Sarah Marsh the one thousand dollars, that the testator not only intended to include but supposed he had actually included the children of his uncle David Ogilvie in the previous bequest. He here speaks of her as his cousin, the daughter of his uncle David Ogilvie; and of the one thousand dollars as being in addition or so much more than the equal part " above mention- ed:" alluding, undoubtedly, to the bequest of five thousand dollars, which she would be entitled to as one of his uncle David Ogilvie's children. There is no other rational meaning to be given to these expressions; and I must either put this construction upon them or reject the words altogether as being senseless and useless. This, indeed, I am not at liberty to do: it being a leading rule in the construction of wills, that the intent of the testator is to be observed and no part of the will to which a meaning or operation can be given is to be rejected. And I may here remark, that, to preserve and give effect to those words, requires us only to believe what may very easily have happened, namely, in transcribing the will, the testator by mere inadvertence or mistake omitted to pen the name of David Ogilvie whilst naming the uncles whose children he in- tended to provide for in the bequeathing clause. And that the court may correct the mistake by supplying the omission is well founded in reason and perfectly well settled by authority: *Humphreys* v. *Humphreys*, 2 *Cox's C.* 186; also 1 *Roper on Legacies, ch.* 2, § 17, 18, 19.

But there is another ground taken by the complainants' counsel, which I apprehend is likewise tenable. It is contained in what fell from Sir William Grant, M. R. in the case of *Smith* v. *Fitzgerald*, 3 *V. & B.* 7, where he admitted the doc- trine (although, by the bye, there was no room for its applica- tion in the case before him) that a declaration or recital by a testator in his will of his having given something, though, in

fact, he had not, was sufficient evidence of an intention to give and amounted to a gift. He observed, however, that the court must see very clearly there was nothing in the will to which the recital could refer, before it was turned into a distinct bequest, otherwise an inaccurate testator might be held to make a second bequest when he had only made an incorrect reference to the first. It rests upon implication, which, if sufficiently strong and expressive of an intention that the devisee or legatee should take, will raise a devise or bequest; although, according to Lord Eldon, there is no authority for holding, that a mere recital, without more, amounts to a gift or demonstration of an intention to give: *Dashwood* v. *Peyton*, 18 *Ves.* 41. The rule, I think, is correctly stated in Roper's excellent work before cited: 2 *vol.* 350, namely, where the recital manifests an intention to make a present bequest and the words of actual bequest are omitted by mistake, the words will be supplied, and the recital will amount to an implied bequest.

It is unnecessary to examine the cases which have been decided upon this point. Instead of doing so, I shall content myself with two or three extracts, by way of elucidation, from a work which bears the impress of great legal acumen and is considered as good authority even at this day. I refer to Godolphin's Orphan's Legacy. He puts a case thus: " if the " testator, who hath bequeathed nothing to A. B., should say, " that ' out of the one hundred pounds which I have bequeathed " ' to A. B. I give fifty pounds to C. D.' here C. D. would be " entitled to the fifty pounds, but to A. B. nothing would be " due, because it was not the testator's mind to bequeath any " thing to him, but rather to lessen or diminish it, if any thing " had been given to him. For a diminution, redemption or " taking from in such a case, hath its operation to evince by " how much the less, not by how much the more, the legacy " is due. But if the testator say, ' I bequeath one hundred " ' pounds to A. B. beside my field Longacre;' in this case " Longacre is presumed to be bequeathed as well as the one " hundred pounds." Again, he says—" Suppose the testator " speaks only after this manner, namely, ' if my son A. B. " ' marry with C. D. let not my executors give him a one hun-

" ' dred pounds.' Whether from these words by the contrary " sense, if he do not marry with C. D. the legacy of one hundred " pounds is understood to be left to him? This is held in the " affirmative: *part 3. ch. 3, §. 3, 5.*" These are instances where the legatee would take by implication, from the manifest intention of the testator as evinced by the force of the words used.

The words used by the testator in the present case seem to be quite as explicit and forcible. They import a bequest made to his uncle David Ogilvie's children of a part or share of his estate; and the part is not left uncertain in point of amount: it is fixed at five thousand dollars either to each or both of them; while he gives to his cousin Sarah Marsh, from a particular regard he had for her (for it is admitted she was a favorite relative and with whom he was in the habit of corresponding) one thousand dollars more than the equal part above mentioned.

Suppose the testator had said, " I give to my cousin Sarah " Marsh one thousand dollars besides the sum of five thousand " dollars," or, " besides her equal part of the sum of five thou- " sand dollars, as one of the children of my uncle David " Ogilvie:" could there be a reasonable doubt, by the force of those words, of her being entitled to both sums? It appears to me there could not! Although the words of the will are not so clear and explicit as those just mentioned, yet I think they are, in effect, the same ; and sufficient to show the complainants to be entitled to come in as legatees under the first clause in the will in the same manner as if their father had been named therein amongst the testator's other uncles.

There is one case which has fallen under my observation having a bearing upon the present cause and seemingly tending to produce some embarrassment to the question. It is a decision by Sir Thomas Plumer, M. R., in *Shelly* v. *Bryer*, *Jacob's R.* 207. There, a testator directed the residue of his estate, after the death of his sister, to be divided amongst his nephews and nieces. By a codicil, made two years after the will, he gave to a great niece, born subsequent to the date of the will, a legacy of five hundred dollars, which was expressed

to be " over and above her share after the decease of my sister,
" in the body of my will treated more at large." He had spo-
ken of her as his niece ; and the question upon the codicil
was, whether she and all the other great nephews and great
nieces of the testator, who had been born between the time of
making the will and the death of the tenant for life, were enti-
tled to come in for a share of the estate equally with their
parents who were the nephews and nieces mentioned in the
will. The master of the rolls acknowledged there was great
difficulty in deciding, as he did, that the great nephews and
great nieces were not entitled to take under the will by virtue
of the retrospective words used in the codicil—saying, how-
ever, when he first expressed his opinion, that he was not
satisfied with the conclusion to which he had arrived : and yet,
afterwards, he adhered to it and made a decree accordingly.
These circumstances must certainly detract from the weight
of the decision as an authority; and I should hesitate sometime,
if for no other reason, before I undertook to follow it as a pre-
cedent.

But it is not necessary I should express an opinion in hostility
to it. There are features in the case which distinguish it from
the present and reasons assigned not applicable to the circum-
stances before me: such, for instance, as the codicil's being
made two years after the will, so that, although it was to be
taken with the will, yet it was not so strong as if it had formed
a part of it : for, being made separately and so long afterwards,
it afforded room for the inference that the words used in the
codicil proceeded from a mistake of the testator, arising from
a misrecollection of the contents of the will and not from an
intention to extend the terms of the will to great nephews and
nieces. And another difficulty in the case of *Shelly* v. *Bryer*
is, (as was acknowledged) that by extending the term "nephews
and nieces" so as to embrace great nephews and nieces, it lets
in both classes, including parents and children, to take together
under the same denomination, which, as it was said, was con-
trary to all the authorities. The present case steers clear of
all such difficulties, if I am correct in the view before taken of

it; and I shall not, therefore, permit that decision to stand in the way of the one which I feel myself bound to make.

This disposes of the leading question in the cause.

But another point immediately arises out of it: whether the complainants are each entitled to five thousand dollars or is this sum to be divided between them? After the best consideration which I have been able to bestow upon this part of the subject, I am of opinion they are entitled severally to that sum.

The first clause of the will clearly imports that a legacy of five thousand dollars is given to each of the children who should be living of his uncles; and the only ambiguity about it arises from the words " to each of the above mentioned per- " sons." This would seem to apply to the uncles, they being the persons named. But they were all dead and understood so to be by the testator; and could not, therefore, have been intended as the persons to take. As the children were the persons to take, the words must be considered as applying to them. Whatever difficulty there is upon this point, it does not arise in the first, but in the subsequent clauses of the will, where he gives the distinct legacies to Sarah Marsh and to Barnard Bayley; and which clauses, it is contended, will admit of no other interpretation than that the previous bequests of the sums of five thousand dollars are to be divided amongst classes or families and not go to individuals. Although the words " the equal part above mentioned of my uncle David Ogilvie's " children" might be thus construed, yet I think no violence is done to the sense or meaning of the terms if they are made to harmonize with the more explicit declaration of the first clause : that the bequest of five thousand dollars is intended for each of the children of all the uncles.

It is true, that in speaking of the " equal part," the idea of a division to be made is carried with it: but it may as well refer to the equality of entire and distinct legacies intended for all the children and to the part of the testator's estate which they would thereby take.

If each of David Ogilvie's children take a legacy of five thousand dollars, do they not both take an equal part, as much

24

so as if that sum were to be equally divided between them? Such a reading, it appears to me, is perfectly consistent and rational.

With respect to the expression in the bequest to Barnard Bayley of one thousand dollars, " in addition to his share in the " family of my uncle Adrian Marsh mentioned above," it cannot be considered as referring to the five thousand dollars given to the children of Adrian Marsh, and thus, by implication, render it necessary to treat it as one legacy to his family generally to be divided amongst them and of which Mr. Bayley, as a great grandson, would be entitled to a share. It is impossible to consider him entitled to any share under the first clause of the will, without disturbing well settled principles of law. Grand children and great grand children do not take under the word " children," except from necessity and where the will would otherwise remain inoperative or where the testator has clearly shown, by other words, he did not intend to use the term according to its actual meaning, but in a more extensive sense. Neither of those cases occur here. There are persons who answer the description of children living of the testator's uncles, namely, the complainants in this cause. It is no objection, that they are only children of one of the uncles: for the gift is only to such as should be living. It does not extend to the issue or descendants of such as might be dead. As a general rule, to enable persons to take as legatees, they must accurately answer the description in the bequest; and hence it follows, that if there be a child or children, a grand child or grand children cannot be permitted to participate in a devise or bequest to " children." They cannot both take: for the obvious reason of both not answering the description. Still, where there is a total want of children, grand children may sometimes be let in under a liberal construction of the word "children:" *Crook* v. *Brooking,* 2 *Vern.* 107; *Reeves* v. *Brymer,* 4 *Ves. jr.* 692; *Radcliff* v. *Buckley,* 10 *ib.* 195; *Earl of Orford* v. *Churchill,* 3 *Ves. & B.* 59.

It is clear, therefore, that as Barnard Bayley is not entitled to come in under the description of the " children" in the first clause of the will, the mention of his share in the family of Adrian Marsh must have reference to something else; and I see no

difficulty in applying it to the residuary clause in which he is included for a share of the estate.

The words "mentioned above" may fairly be restricted to the name or person of Adrian Marsh; and, therefore, form no obstacle to this mode of considering it: *Jackson* v. *Elmendorf*, 3 *Wend.* 226.

Taking the whole will together, I think the fair and obvious meaning of it is, and such I have no doubt was the intention of the testator, that the children or immediate descendants of his late uncles, being his first cousins, who should happen to be living at his death—and he probably calculated, from their advanced ages compared with his own, a few only would survive him—should each have the specific sum of five thousand dollars by way of legacy; and, having thus provided for them and made such other bequests as he deemed proper, he determined the residue of his estate should go to the more remote descendants of his uncles, their grand children and great grand children: and so he has directed.

The result of my opinion is, that the complainants Sarah Marsh and Mary Hughes are severally entitled to receive a legacy of five thousand dollars.

A question has been made whether they are entitled to interest upon these legacies; and also, whether Sarah Marsh was entitled to receive it upon her additional legacy of one thousand dollars. The general rule is, that where no time is specified in the will, legacies are payable in one year after the death of the testator; and from that period bear interest. There is no case to be found in the books where an exception has been made on the ground of the legatee's not being in a situation to receive or omitting to demand payment. The right to interest after a year arises from the presumption of the executor's having then reduced the property into possession, paid the debts, and become able to apply the residue amongst the legatees. And whether he has done so or not, the legacy is then due; and if it be not satisfied, the executor must pay interest from such time although assets may not have come to his hands to discharge it until long afterwards: *Wood* v. *Penoyre*, 13 *Ves.* 333; *Burke* v. *Ricketts*, 10 *ib.* 382. In the latter

case, Lord Redesdale said, the executor is not to pay interest for any time within the twelve months, although during that time he may have received interest, but if he have assets, he is to pay interest from the end of twelve months, whether the assets have been productive or not. These cases serve to show that whenever the payment has been prevented or delayed beyond the year, the interest follows of course: *Ingraham* v. *Postell's executors*, 1 *M'Cord's C. R.* 88.

It is true, the executors, in the present case, were not bound to seek out the complainants in England and make remittances of the money to pay them there. It is sufficient if they pay them here, when properly called upon: but I know of no rule or principle which exempts them from the payment of interest in the meantime. If executors make an actual tender of the legacy and, from inability on the part of the legatee to give the necessary security to refund, the actual payment is delayed, I do not mean to say interest would accrue. But no tender or offer has been made in this case. Indeed, the executors have not felt themselves authorized to pay at all without the decree of this court for their justification. They must pay interest.

I shall refer it to a master to ascertain and report the amount due upon the several legacies for interest, to be computed from the expiration of one year after the death of the testator; and the master may enquire as to the rate of interest or income which the assets in the hands of the executors have produced. If it has generally been less than seven per cent., he may charge them at a rate which he deems just.

Another question has been submitted: whether the residuary legatees ought not to have been made parties to the suit. It is clearly settled, that they are not necessary parties. The bill is filed for particular legacies of a specific amount; and the defendants admit assets sufficient to pay all such legacies. No general account is, therefore, to be taken. The executors make all the defence which is necessary for the protection of the rights and interests of the residuary legatees: 2 *C. C.* 124 & 178; *Finch's R.* 243; 1 *B. C. C.* 303; 1 *Mad. R.* 446; *Ross* v. *Crary*, 1 *Paige's C. R.* 416; *Hallett* v. *Hallett*, 2 *ib.* 15.

With respect to the costs. It is only just and right the costs

on both sides should be paid out of the money in controversy. The defendants are not in the wrong by requiring the decision of the court upon the questions which have been fairly submitted, without any unnecessary litigation, on their parts. They ought not to bear their own costs, much less pay, out of their own pockets, the complainants costs; and it would be unjust towards the residuary legatees to permit them to be charged upon the estate at large. The case of *Morrell* v. *Dickey*, 1 *J. C. R.* 153, is an authority in point. I shall allow to the defendants their costs out of the legacies: one half to be borne by each of them.