Matter of the Estate of SARAH McGEEHAN, Deceased.

(Surrogate's Court, New York County, April, 1921.)

*Wills — construction of — harmonizing of intent and language into a valid disposition of the whole estate — when there is doubt whether to impute legality or illegality to a provision in a will it is the duty of the court to adopt that construction which prevents intestacy and which does not destroy the fundamental scheme of the whole will — although testatrix omitted to mention what she bequeathed and devised to a certain charitable institution it will be held that she intended to give to it the remainder of her estate after certain life estates.*

PROCEEDING upon the construction of a will.

William Wadsworth (Joseph Day Lee, of counsel), for petitioner.

Campbell, Flaherty, Turner & Strouse (W. Irving Taylor, of counsel), for trustee.

Lee & Wadsworth (Joseph Day Lee, of counsel), for various heirs.

Alley, Lee & Voorhees (Joseph Day Lee, of counsel), for various heirs.

47

Peck & Hancock (Bayard L. Peck, John T. Hancock and Stanley W. Jones, of counsel), for the St. Joseph Home for the Aged; St. Vincent's Hospital; and the Sisters of Charity of St. Vincent de Paul.

Edward H. Daly, for the Roman Catholic Orphan Asylum of the City of New York.

Andrew S. Hammersley, special guardian.

Louis Cuvillier, special guardian.

COHALAN, S. The referee has held that the only valid life estates created by the will and codicils are those for Ellen Gallagher and Bernard Hannigan, that the other life estates are void, that there is no valid remainder in the codicil, and that there is intestacy as to the real estate that is the subject of the void devises. I have decided that the intent of the testatrix and the language of her will and codicils can be harmonized into a valid disposition of her whole estate. Ellen Gallagher gets a life estate in almost all the real estate, and one of the nephews gets a life estate in certain property at the corner of Avenue C and Second street. The questions of construction involve the life estates to three other nephews and a niece and the remainders limited on said life estate. The sister, Ellen Gallagher, and all the nephews and the niece are dead. The nephews and the niece who survived the first life tenant, Ellen Gallagher, have already enjoyed their life estates, for the trustee acted in the belief that they were valid. The real practical question is, who is entitled to the remainder interests? The court is bound to make an effort to sustain the plain intention of the testatrix to give the remainders to charity if it can legally be done, and to decide the further question of which charity or charities are entitled to them.

Down to the 6th article of the will there can be no doubt that there was a valid life estate to Ellen Gallagher, and, after her death, a legal and valid life estate to each nephew and the niece, with a vested remainder limited on each such life estate to each of the five charities described in article 5.

When the first nephew or niece died, the fee of the portion of the real estate held for the benefit of that nephew or niece would vest as tenant in common absolutely in possession in the charitable institution or corporation described in subdivision 1 of article 5 of the will; upon the death of the next nephew or niece the same result followed as to that individual one-fifth of the real estate, the owner of the fee being described in subdivision 2 of article 5, and so on until the death of the last of the four nephews and niece. So far the language is clear and free from ambiguity, or at least the legal construction of such language appears to be free from doubt. Each one-fifth of the real estate is thus completely disposed of. Life interests with vested remainders in each one-fifth part of the real estate are given. There is no indication of an intention to suspend vesting of all the real estate until the death of all five life beneficiaries.

The provision of the 6th article that directs payment of income by the executors to the institutions during the life of some of the life tenants is the first indication of anything that suggests an intention to illegally suspend the power of alienation. A provision intended to cut down the estates already given should, in my opinion, be expressed in clearer language than that in article 6. The theory that the testatrix intended the executors to act as agents of the institutions in collecting any rents belonging to any undivided fifth of the real estate, that had already vested in possession and enjoyment of an institution by the death of a nephew or niece, is as consistent with the language of the 6th article as the

contention that the testatrix therein evidenced an intention to withhold from the institutions possession of all the real estate until the death of the last surviving nephew or niece. Furthermore, this provision, if illegal, may be extricated from the rest and be expunged from the will, if thereby the plan of the testatrix may be saved. *Kalish* v. *Kalish,* 166 N. Y. 368. While one òf the institutions owned an undivided one-fifth of the real estate as tenant in common, the executors in looking after the property of the life beneficiaries would collect the rent for the owner of the undivided one-fifth. This would be the usual practice, and it is reasonable to assume that this is the situation that the testatrix had in mind in directing the executors to collect all the rents, even after the death of any of the nephews or niece. It is very likely that the provision was inserted merely for convenience of administration. When there is doubt whether to impute legality or illegality to a provision in a will, it is the duty of the court to adopt that construction which prevents intestacy and which does not destroy the fundamental scheme of the whole will.

The same reasoning applies to the further provision of the 6th article authorizing a majority of the nephews and niece to select some suitable person to take charge of the real estate if the executor named '' should die or become incapacitated to act as executor before the several institutions above named become wholly vested in the fee of the aforesaid real estate.'' By the words '' wholly vested in the fee '' I think the testatrix meant before all the institutions become vested in possession of all the real estate. She evidently knew that if one of the life beneficiaries died, the institution succeeding to the remainder limited on that life estate could not step in at once and take possession of its one-fifth share. A partition would be necessary, and it might be advantageous to the institution to defer a division until the

termination of all the life estates. Of special significance in this connection is the fact that the Sisters of Charity of St. Vincent de Paul are named as beneficiaries of three of the five remainders, and would not have the last of the three shares until the death of the fourth of the nephews and niece. It is also to be observed that the institutions are given no voice in the selection of a successor trustee. The referee refers to this language as a strong indication of an intention to illegally suspend the power of alienation, but it should be noted that it does not occur in any dispositive part of the will, but only in the paragraph authorizing some one to look after the real estate in the event of the death or incapacity of the executor. If the language above quoted is of doubtful meaning, and it must be conceded that it is ambiguous, it should not be given the effect of invalidating the 4th and 5th articles in which the real estate is completely and validly devised, and thus destroy the entire scheme of the will and cause intestacy.

It seems to me that up to this point the will is valid. If it ended here and there were no codicils, I think there would be little or no difficulty in sustaining its provisions.

In the first codicil the devise of a life estate to Ellen Gallagher is confirmed. To one of the nephews, Bernard Hannigan, is given a life estate (after Ellen Gallagher's death) in the particular property located at the corner of Avenue C and Second street. To this extent the provisions of the will are changed, with the result that one of the four nephews receives a life estate in a particular piece of property instead of a life estate in one-fifth part of that in which Ellen Gallagher had a life interest. The provision for the life estates to the other three nephews and the niece is to be read in connection with the similar disposition in the will. In fact the codicil expressly states that it is to be taken as a part of the will. Read in

this way, and in the light of the language there used, it appears that the words " after their deaths " is to be taken as meaning " after their respective deaths." There is no direction such as " upon the death of the survivor," which would clearly show an intention to suspend the power of alienation of all the real estate until the death of the last surviving nephew or niece. The use of the word " deaths " is significant to show that what was intended was the death of each nephew or niece as the condition upon which absolute owner-ship in the portion held for such nephew or niece depended. Applying the familiar rule that a testa-tor's intention is not to be gathered from a detached portion of the will alone, but from the whole will taken together (*Matter of Title Guarantee & Trust Co.*, 195 N. Y. 339, 344) there is little doubt in my mind what the testatrix meant when we read the detailed provisions of the will, as modified by this brief part of the codicil. She evidently meant that upon the death of each nephew or niece, the part of the real estate limited on that particular life vested absolutely in possession of the remainderman. She intended to follow the same general scheme outlined with more particularity in the will.

In deciding who is entitled to the remainder inter-ests another serious question arises. Under the will there were five distinct and separate remainders, lim-ited on the life of each of four nephews and a niece. By giving, in the codicil, a life estate in a specified piece of real property to the nephew Bernard, the testatrix evidently realized the imprac-ticability resulting from said change if she permitted the part of the will bequeathing the five separate remainders to stand. In the will St. Joseph's Home, in charge of the Sisters of Charity, was given two of the remainders. St. Vincent's Hospital, in charge of the Sisters of Charity, was devised another, and the other two-fifths were to go to the Roman Catholic

Orphan Asylum. After providing for the life estates, the codicil provides as follows: "After their deaths, I give, bequeath and devise to the Sisters of Charity of the St. Vincent de Paul, a corporation duly incorporated under and pursuant to the laws of the State of New York for the benefit of the institution under their charge, known as St. Joseph's Home for Aged Females, in Fifteenth street, in the City of New York." The testatrix omitted to mention what she bequeathed and devised to the Sisters of Charity of St. Vincent de Paul. The referee decided that nothing passed under this clause on the authority of *Dreyer* v. *Reisman,* 202 N. Y. 476. In that case the will was as follows: " *First.* After all my lawful debts are paid, all funeral and testamentary expenses, I give, devise and bequeath unto my living son and daughters, Charles Hasselbrook, Martha Ellen Nordbruch and Senie Meyer, share and share alike, the same to be equal divided between themselves. *Second.* All real estate if any owned by me and the same cannot be sold at a fair market price, then same sall be sold at public oction." The Special Term and Appellate Division held that this constituted a gift of the entire estate. The Court of Appeals reversed, and held that this intent was not sufficiently clear and that nothing passed under the will. In discussing whether the testator intended to make a devise to anyone, the Court of Appeals, by Werner, J., said, at page 481: " That is a question which, in the nature of things, cannot often arise in the precise form in which it is presented here. There are many cases in which the subject or the object of a gift have been imperfectly identified or described, but yet with sufficient certainty to support a gift by implication (*Marsh* v. *Hague,* 1 Edw. Ch. 174; *Matter of Vowers,* 113 N. Y. 569; *Masterson* v. *Townshend,* 123 N. Y. 458). We have found no case, however, to support a gift by implication where, as in this

instance, there is no mention, description or identification of the subject of the intended gift or devise. ' To uphold a legacy by implication, the inference from the will of the intention must be such as to leave no hesitation in the mind of the court and to permit of no other reasonable inference.' (*Broadhurst* v. *Field,* 135 N. Y. 564–568).'' The facts of the case now before the court are distinguishable from the above case. There can be no other reasonable inference but that the testatrix intended to give to the St. Vincent de Paul corporation the remainder after the life estates in the codicil. Reading both will and codicil together her intention seems to be sufficiently clear. She had given life estates in all the real estate and this remainder was all that was left. The provisions of the will giving in five separate parts the same property to the two or three charitable institutions, including three-fifths to institutions under charge of the Sisters of Charity and the position of the clause under consideration as a residuary clause, all point unmistakably to a gift of all the remainders to the Sisters of Charity of St. Vincent de Paul. The theory advanced by the Roman Catholic Orphan Asylum is manifestly impracticable and could be adopted only as a last desperate resort against intestacy.

The will and codicil are valid and are construed accordingly. Exceptions to those portions of the referee's report which held that this court has jurisdiction to construe the will and to the disposition of the issue as the Statute of Limitations are overruled. The other exceptions are sustained as indicated in this memorandum.

Decreed accordingly.