HUNTER, EXECUTOR, *vs.* GREEN.

1. The first clause of a will, after an absolute bequest of certain specific property to the testator's wife, was as follows, viz: "That she may have a comfortable support and maintenance, I give her the tract of land on which I now live, *together with all my property of every kind whatsoever that I may die possessed of,* for her use, during her natural life," &c. A subsequent clause was in the following language: "I give and bequeath to my niece, Ann Finley, my negro boy Franklin, to her and her heirs forever, and also my negro girl Peggy, until she arrive at the age of twenty-five years, at which age she is to be emancipated," &c. Held:

   That Ann Finley took a *vested remainder* in the slaves bequeathed to her, limited upon the life estate of the testator's widow.

2. Where personal property is bequeathed to one for life, with remainder over in fee, the executor can make but one delivery; a delivery to the first taker enures to the benefit of the remainder man, and a delivery to the latter, with the assent of the former, is equally good; and in either case, the title of the executor is gone forever.

3. The act of the Legislature of South Carolina, passed in 1841, making it illegal to provide by will or deed for the manumission of slaves, cannot affect the rights of a legatee who received the possession of the slaves bequeathed to him from the executor in South Carolina, and brought them to this State, before the passage of that act, the provisions of the will being then valid by the laws of South Carolina.

ERROR to the Circuit Court of Jefferson.
Tried before the Hon. A. B. MOORE.

This was an action of DETINUE brought by the plaintiff in error, as the executor of Thomas Finley, deceased, against the defendant in error, to recover a certain negro woman named Peggy, and some seven or eight children, her natural increase.

The plaintiff, in order to maintain his action, offered in evidence, the last will and testament of Thomas Finley, dec'd., the parts of which that are deemed material, read as follows: "I give and bequeath unto my beloved wife, Jane Finley, the following part of my estate, namely: negroes, Fenda, Tom, Juda, William, Caroline, Milly and Rose; and all my beds and bedclothes, with my mahogany table, cupboard and cupboard furniture, and kitchen furniture, to her and her heirs and assigns forever: That she may have a comfortable support and maintenance, I give to her the tract of land

22

on which I now live, containing two hundred and fifty acres, situate on Sawney's creek, in the State and District aforesaid, together with all my other property of every kind whatsoever, that I may die possessed of, for her use during her natural life; and I hereby declare that the bequests and provisions hereby and hereinbefore made to my said wife Jane, if accepted, is to be taken and received by her in bar and in lieu of dower in my estate. After the death of my said wife Jane, and after payment of the several legacies hereinafter mentioned, I give and bequeath to Reuben Finley, of the State of Tennessee, wheel-wright, whose mother's maiden name was Catharine Kinder, the aforesaid tract of land, together with all the negroes and all the property belonging to my estate, of what kind soever, real and personal, at the death of my said wife Jane, to him and his heirs forever, on the following conditions, viz: That he emancipate all the female children of my two negro women, Nancy and Jinney, or cause them to be sent to the State of Indiana or Ohio, where the laws of the State will liberate them. The said female children are to be set free, as they respectively arrive at the age of twenty-five years, and their children with them, should they have any, as it is my wish and desire to put a stop to the slavery of the race of negroes belonging to me in future." Then, after giving some directions to said Reuben Finley as to his burial-place and the manner in which he wishes it ornamented, he proceeds: "I give and bequeath to my niece, Ann Finley, my negro boy Franklin, to her and her heirs forever, and also my negro girl Peggy, until she arrive at the age of twenty-five years, at which age she is to be emancipated or sent to the State of Indiana or Ohio, where the laws will free them, and her children, if she have any, shall go free with her. The negro boy Franklin is not to be bartered or sold out of her family, where I trust he will be well treated."

This will was made in 1832, in Abbeville District, South Carolina, where the testator lived and died. His death occurred in 1831, when this will was probated by the present plaintiff, who was duly appointed executor, and took upon himself the performance of that trust. After the death of the testator and the probate of the will, as above stated, Jane

Finley, with the consent of the executor, remained in the possession of the estate, and particularly of the negro woman Peggy, which had been bequeathed to the said Ann Finley. Ann Finley intermarried with the defendant, and in 1832, removed from South Carolina to Jefferson county, Alabama, bringing both the negro boy Franklin and the negro woman Peggy with them, and which they have retained in their possession ever since. Jane Finley, the widow, died in 1845.

The plaintiff also introduced an act of the Legislature of South Carolina, passed the 17th December, 1841, consisting of four sections, which, after the enacting clause, are as follows:

1. ' " That any bequest, deed of trust, or conveyance, intended to take effect after the death of the owner, whereby the removal of any slave or slaves, without the limits of this State, is secured or intended with a view to the emancipation of such slave or slaves, shall be utterly void and of no effect to the extent of such provision; and every such slave so bequeathed, or otherwise settled or conveyed, shall become assets in the hands of any executor or administrator, and be subject to the payment of debts, or to distribution amongst the distributees or next of kin, or to escheat, as though no such will or other conveyance had been made.

2. " That any gift of any slave or slaves hereafter made by deed or otherwise, accompanied by a trust secret or expressed, that the donee shall remove such slave or slaves from the limits of this State, with the purpose of emancipation, shall be void and of no effect; and every such donee or trustee shall be liable to deliver up the same, or held to account for the value thereof, for the benefit of the distributees or next of kin.

3. " That any bequest or conveyance of any slave or slaves, accompanied with a trust or confidence, either secret or expressed, that such slave or slaves shall be held in nominal servitude only, shall be void and of no effect; and every donee or trustee holding under such bequest, gift or conveyance, shall be liable to deliver up such slave or slaves, or held to account for the value, for the benefit of the distributees or next of kin of the person making such bequest, gift or conveyance.

4. "That every devise or bequest to a slave or slaves, or to any person upon a trust or confidence, secret or expressed, for the benefit of any slave or slaves, shall be null and void."

The plaintiff then offered in evidence the decision in the case of Finley et al. v. Hunter, reported in the 2d vol. of Strobhart's Equity Reports p. 208, to prove the construction put upon said will and act, by the Court of Appeals in South Carolina; also the answers of the defendant to the interrogatories filed by the plaintiff under the statute in this State. By these answers the defendant states, that he was in the possession of the negroes sued for; that he claimed them under the will of Thomas Finley; that he received the said woman Peggy, from the executor in South Carolina, before he came to Alabama; that she was now about thirty-eight years of age; and that her children had been born in this State. He also states that he received her from the plaintiff, as executor of Finley, deceased, and as a legacy due to his wife, under and by virtue of the will, and had held her and her increase ever since as his own property.

The defendant introduced a witness, who proved substantially the same facts as those contained in the answers of the defendant to the interrogatories propounded to him by the plaintiff; and further, that she came out to Alabama with the defendant when he removed from South Carolina, and that defendant brought said negroes with the knowledge and consent of Jane Finley, the widow of the testator, and with the knowledge and consent of the executor, the plaintiff.

On this evidence, the plaintiff asked the court to charge the jury: "That, under the will of Thomas Finley, the widow was entitled to a life estate in all the negroes of which he died possessed, including those bequeathed to Ann Finley; which charge the court refused, and charged the jury, that the devise to Ann Finley was an absolute bequest, and took effect immediately upon the death of the testator; to which the plaintiff excepted."

The plaintiff further asked the court to charge the jury, that, though they might believe from the evidence that the plaintiff had consented to give up said negroes to defendant, and did give them up; yet, under the will of Thomas

Finley and said act of 1841, and the construction put upon it by the Appellate Court of South Carolina, such surrender by the executor did not prevent him from maintaining the present action; which charge the court refused.

The charge given, and the refusals to charge as requested, are now assigned for error.

NICOLSON, for plaintiff in error:

1. The will must be governed by the law and decisions of the place where it was executed. Peake v. Yeldell, 17 Ala. 636; Conover v. Chapman, 3 Cranch 319; 2 Bailey 436; 5 Peters 151; Shep. Touch. 496; Story's C. Law; 3 Story's R. 755.

2. The assent of the executor can confer no rights other than those given by the will. The right of assent by the executor is a protection intended for the benefit of the executor. 4 Bac. Ab.; Toll. on Executors, L. 3.

3. The statute of limitations does not apply to the case, as we contend the executor had no right to sue until the death of the widow, and six years had not elapsed before suit was brought.

It is contended that the statute of South Carolina of 1841, can have no exterritorial influence, and the negro having been brought to this State before its passage, is exempt from its operation. This principle cannot be maintained, if it is admitted that the law of the domicil is to govern. It is clear that the will was valid at the time of its execution, and the emancipation could have been effected if it had been immediate. This was expressly decided in the case of Frazier et al. v. Frazier's Executor, 2 Hill's Ch. R., (S. C.) If, then, Green had remained in South Carolina, he would unquestionably have been bound by Finley v. Hunter, 2 Strob. Eq. Rep. 208; and this property, under the rule then laid down, could have been recovered, if our construction of the will be correct. Is this changed by carrying the property across the State line, without disaffirming the principle that the law of the domicil is to govern as to the construction of a will? He was bound under Frazier v. Frazier, *supra*, to have sent the slaves off. Can he now, under Finley v. Hunter, *supra*, be allowed to retain them? If this is so, then a will may be

destroyed in effect, by removing the property beyond the State where the will was made; but personal property has no *situs*.

The executor may bring the suit; for, if the slaves in controversy are assets, the judgment against the executor will be conclusive against the heirs. Head v. Perry, 1 Monroe 255.

In Blackman v. Gordon, 1 Rich. E. R. 61, and the same case, 2 Rich. E. R. 43, as well as in Finley v. Hunter, 2 Strob. E. R. 208, a construction is put upon the statute of 1841, and in all these cases it was decided, that the statute of 1841 was retrospective in its operation, and related back to the will; and by operation of the statute they are now made assets in his hands. See Lenoir v. Sylvester, 1 Bailey's R. 632.

E. W. PECK, *contra :*

1. By the will of Thomas Finley, Ann Finley, his niece, now the wife of the defendant, on the death of the testator, took a present vested estate in the slaves Franklin and Peggy, and not an estate in remainder dependent upon the death of testator's wife, Jane. 1 Jarman on Wills 414, *et seq.*; Finley v. Hunter, 3 Strob. Eq. Rep. 84–5.

2. The said legatee took the slave Peggy, coupled with a trust, to wit: a trust that when the said slave attained the age of twenty-five years, she and her children should be emancipated and sent to a free State. If, then, this trust, which was lawful when it was created, afterward and before its execution, became unlawful, and yet, nothwithstanding this, the estate of the said legatee, instead of becoming absolute, terminated when the said slave reached the age of twenty-five, then she would hold her in trust for the next of kin, and not for the executor, who had parted with all his title as executor, by his assent to the said legacy.

The assent of the plaintiff, as executor, was co-extensive with the will. The testator by his will made an entire disposition of the slave Peggy, and her children ·that might be born; nothing was left to return to the estate.

The executor assented to this disposition, by delivering the said slave to the legatee, Ann Finley, and this assent divested him, as executor, absolutely and forever of all title to the

said slave; he, therefore, has no title, and consequently, cannot sustain this action.

The act of South Carolina subsequently made, that is, made after the death of the said testator, and after the executor had assented to the disposition of this property, made by the will, and also, after the said legatee, with the said property, had, as it was lawful for her to do, removed from the said State of South Carolina, could not affect either the rights of the legatee or the duties imposed upon her by the will, nor could it affect the rights of the said slave and her children; they were fixed and vested, and beyond the reach and influence of the said act.

That act is a mere municipal regulation, based upon a policy supposed to be beneficial, and necessary for the State of South Carolina, and therefore can have no binding operation beyond the limits of said State, or in any manner affect the rights of persons or things, in a foreign jurisdiction. Story's Conf. Laws 23 § 22. This being so, the rights and duties of the defendant, as the husband of the said legatee, Ann Finley, nor the *status* of the said slaves in Alabama, before and at the passage of said act, can in any wise be affected by its passage.

Again; some two years before the passage of this act, the slave Peggy had reached the age of twenty-five years; therefore, her right to emancipation had become perfect, and even if she had remained in South Carolina, that right could not have been destroyed by its passage: it would not operate retrospectively for that purpose.

3. The record shows, that defendant's wife is the next of kin to the testator, Thomas Finley, and it does not appear that there are any others that hold that relation; if, then, the said slave and her children be not entitled to their freedom, the defendant is entitled to hold them in right of his wife, as next of kin, and if it be said that there are others that stand in the same relation to the testator as his wife, (which, however, does not appear,) then he may rightfully hold them for himself and those who have a like interest; in such case, all the next of kin are tenants in common, and the possession of one is the possession of all. Upon what principle, I ask, can the executor recover in such a case?

GIBBONS, J.—The first question presented by the record is, whether Ann Finley took under the will of Thos. Finley, deceased, an absolute estate in the property bequeathed to her, or a remainder limited upon a life estate in the widow, Jane Finley.

In the construction of a will, the rule is, to give it that interpretation, if possible, which will make each part harmonize with the others, so that all the clauses may stand and be consistent with each other. This construction is to prevail, if the will is susceptible of it. If this cannot be done, and some portions are repugnant and irreconcilable with others, then the subsequent clauses shall be held to control and modify the former. Jarman on Wills 411, *et seq.* Applying this rule of construction to the will under consideration, we are constrained to hold that Ann Finley took an estate in the property bequeathed to her, subject to the life estate of the widow, Jane Finley. The testator, after bequeathing to his wife, Jane, certain slaves and other property absolutely, proceeds to give her a life estate in all his other property, of every kind whatsoever, that he might die possessed of, making no reservations or exceptions of any kind. When he comes to define the bequests to Reuben Finley, he uses the following language: "After the death of my said wife, and after the payment of the several legacies hereinafter mentioned, I give and bequeath to Reuben Finley," &c. This language we think sufficiently significant that Reuben Finley was to take the property after the termination of the life estate of the widow, charged with the legacies, and that the legacies, as well as his estate, were postponed to the termination of the widow's life estate. This construction renders the whole will harmonious and consistent; whereas, the construction contended for by the defendant renders the clause, bequeathing the property to Ann Finley, directly repugnant to the bequests to the wife, Jane Finley. Irrespective of the technical rule which we have cited for the construction of wills, we think this will bears upon its face sufficient evidence that it was the intention of the testator that his wife should be preferred to all others for a life estate in all his property, and that Ann, like Reuben, should be postponed to the death of Jane, before the right to receive the legacy should accrue.

It is contended that, with this construction of the will, inasmuch as the girl Peggy should be freed when she arrived at the age of twenty-five years, and as the widow might live beyond that time, Ann Finley, instead of taking a vested interest in the bequest, would take nothing but a contingent remainder. If this were so even, we are not responsible for it. Our duty is, to construe the will according to the intention of the testator, if that intention is apparent. Such intention, if it be legal, makes the law of the case, we are not at liberty to make a new will for the testator, but are bound to construe and give effect, if possible, to the one he has made.

What, then, was the estate which Ann Finley took in this bequest, at the death of the testator? Not a contingent remainder, as is contended by the defendant would be the case with this construction of the will, but a vested remainder—an interest in her which would pass to her representatives at her death, and which she could alienate by bequest or conveyance. In speaking of the test as to whether a remainder is vested or contingent, Chancellor Kent says: "It is the present capacity of taking effect in possession, if the possession were to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder. When the event on which the preceding estate is limited, must happen, and when it also may happen before the expiration of the estate limited in remainder, that remainder is vested; as in the case of a lease to A. for life, remainder to B. during the life of A., the preceding estate determines on an event which must happen; and it may determine by forfeiture or surrender before the expiration of A.'s life, and the remainder is therefore vested. A remainder limited upon an estate tail is held to be vested, though it must be uncertain whether it will ever take place." 4 Kent Com. 203. Again, in defining a contingent remainder, the same author says: "It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent interest." Ib. 206. This is conclusive to show that the actual estate which Ann Finley took was a vested, and not a contingent remainder.

This remainder being vested by the death of the testator, two things, and but two, were wanting to give to Ann Finley the right to present enjoyment of the bequest.   One was, the extinguishment of the life estate to which her legacy was postponed, and the other, the assent of the executor to the payment or delivery of the legacy.   The life estate of Jane Finley in the negro woman Peggy, was to that extent an absolute property in her; she could sell it, give it away, or dispose of it in any manner that she saw proper, provided she did not infringe upon the estate in remainder.   If she chose to sell or give it to Ann Finley, it was perfectly competent for her to do so; and on her so doing, one of the obstacles to the present enjoyment of the bequest to her was removed.

The executor of a will in which are made bequests of specific chattels, has the right to retain them in his possession, until he can ascertain whether they will be required for the payment of the debts of the testator, or whether he can, consistently with the rights of the other legatees in the will, deliver them.   After these facts are affirmatively ascertained, he is bound to deliver them, and can be compelled to do so. After he has delivered them, however, his legal title is gone, and has become vested in the legatee.   2 Lomax on Ex. 134; 1 Roper on Legacies 315; 1 Wash. Va. R. 398; 2 Robinson 664; 5 Munford 175; 1 Devereux Eq. R. 337.   So, where property like the present is bequeathed to one for life, with remainder over in fee, the executor can make but one delivery.   If he delivers to the one taking the estate for life, that is a delivery for the remainder man, as well as for the life estate; and when the delivery is to the remainder man, with the assent or by the direction of the life tenant, it is equally good as a delivery, and the legal title of the executor is gone forever.   The proof in this case shows, that the defendant, in right of his wife, with the knowledge and assent of Jane Finley, the tenant for life, received the negro woman from the plaintiff, the executor of Thomas Finley, deceased, as a legacy bequeathed to the said Ann by the will.   On these facts, the legal title of the executor is gone, and the plaintiff in this aspect of the case can not recover.

But it is insisted by the plaintiff, that, notwithstanding he

may have delivered the legacy according to the tenor and effect of the will, yet, by virtue of the act of the legislature of South Carolina, passed in 1841, making it illegal to provide for the manumission of slaves, by will or deed of trust, and by virtue of the construction which the Court of Appeals in the State of South Carolina has given to the act, he has the right to recover.

It is admitted that this will was valid in all its parts when it was made, and that the trusts imposed by it for emancipating the slaves were also valid when the defendant received the legacy from the executor. This is expressly decided in the case of Finley et al. v. Hunter, in 2 Strobhart 208, where the construction of this will and the validity of the bequest to Reuben Finley were drawn in question. Admitting, then, for the present, that the statute of South Carolina has been so construed as to give it a retrospective operation, how does the act itself, or its construction, affect this property in Alabama?

Personal property, like the person possessing it, is subjected to the laws, and only to the laws of the country where it is domiciled. The laws of the several States can have no extra-territorial effect by way of creating a right to property or of taking one away. South Carolina can legislate for her own citizens and property, and can bring under the influence of her laws the citizens and property of the other States when they are within her jurisdiction, but beyond this she is powerless. She can pass no law which can affect, in any manner whatever, the property of any citizen of the State of Alabama, or of any other State. The property of the citizens of the several States, like the owner of it, is governed by the laws of the country where it is found. Story's Conflict of Laws 22. Whatever may be the effect of the act of South Carolina, passed in 1841, upon property within the limits of that State, it can have no effect upon property beyond those limits. When the defendant left South Carolina, in 1832, with this property, his rights were then vested and defined by the laws of that State. Such as they then were, he brought them from that State to this, and they were then beyond the reach of South Carolina legislation. If, by the laws of that State, he had a title to the property when

he brought it here, no legislation of that State could after-wards divest it, or change, in any manner whatever, his rela-tion to the property. The courts in Alabama would un-doubtedly enforce any rights in respect to property which had vested in South Carolina before it came to this State. This they would be bound to do on principles of comity. But how could they recognize a right which is alleged to have arisen by the legislation of South Carolina upon prop-erty long before the passage of the act in this State, and claimed here by absolute title in the possessor?

But, it is said, this act, according to the construction given to it by the Court of Appeals of South Carolina, acts retro-spectively, and to an extent to reinvest the executor with the legal title, so as to enable him to recover. It is difficult to comprehend how, even with a construction of the act giving it a retrospective operation, it could produce this result, even in South Carolina. Suppose that the defendant and the property in dispute were in that State, and that the statute was operating upon both retrospectively, how would they be affected by the law? The defendant would then be in possession of property, burthened with a trust which he had not yet performed, and the execution of which had become illegal; would this have the effect to restore the legal title to the plaintiff? Clearly not; because he is not the party in favor of whom the statute would operate. He parted with his legal title when he gave up the legacy, and that he can never get back by the operation of this law. The trusts with which the property was charged, would then enure to the benefit of the distributees and next of kin under the act, and not to the executor. If the statute in its retrospective operation divested the defendant of his title, it would place it, not in the executor, but in those in whose favor it oper-ated. The executor having once administered the property, and parted with his legal title, the law, whenever it divested the title of the defendant, would cast it upon the beneficiaries specified by it. This would necessarily be the utmost extent that the law could operate retrospectively. It would then divest no vested right, because the trust imposed upon the legatee to free the woman not having been performed, and she being a mere chattel, no right to freedom vested in

her, and could not until she was actually emancipated. The effect of the law, then, would be, to change the trust in favor of the slave, to one in favor of the distributees or next of kin. This would not be giving to the law a retrospective operation, in the technical sense of that term; at all events, it would not be divesting any rights that had vested before its passage, nor could it act retrospectively to this extent. To say that the act could divest rights which had vested anterior to its passage, would be a proposition that would not bear argument at the present day. Any such construction would render it unconstitutional and void, according to the decision of the courts of South Carolina in the case relied on by the plaintiff. If the law is to be understood as having a general retrospective and extra-territorial operation, every slave that had ever been set free by deed or will, in the State of South Carolina, no matter where he might be found after the passage of the act, would be liable to be brought back by the heirs or descendants of the person who had made provision for his freedom. It is not believed that even the most visionary would contend for a construction that would lead to such results.

We have carefully examined the case of Finley et al. v. Hunter, 2 Strobhart 208, and are entirely satisfied with the construction of the act there given. That suit was brought by the heirs of Reuben Finley, the legatee named in the will of Thomas Finley, against Hunter, the executor, after the termination of the life estate of Jane Finley. Jane Finley, it seems, died in 1845, leaving a last will and testament, of which Hunter was also executor, being then executor of Thomas, and also of Jane, his wife, with the estate in his possession that was bequeathed to Reuben Finley by Thomas. The bill was filed by the heirs of Reuben for the recovery of this bequest. The court decided, that the estate which Reuben took under the will was a vested remainder, and decreed that his heirs should recover the property; but inasmuch as the trusts in favor of the slaves who were to be set free by the said Reuben, had not been executed, they had become illegal by the act of 1841, and the effect of that act upon the property was, not to enlarge the estate of the legatee, but to create rights in favor of the distributees and next

of kin of the testator; and that the property being in the hands of the executor, he had a right to hold it, under the first section of the act, for the distributees and next of kin. But the court repudiates the idea of giving to the act of 1841, any other retrospective operation than to make illegal any trust then pending in favor of slaves and unexecuted. The court, in giving this construction to the act, places its decision directly upon the ground that no right had vested in the slaves, as they were mere chattels, and could not take or hold legal rights. But, although the law of 1841, acting upon property in South Carolina, produces these results, it by no means follows that it produces the same results in Alabama; on the contrary, we have seen that it cannot. There is nothing in our law making the trust imposed upon this property illegal; and the defendant, if he thinks proper, may execute it. But even if he does not, we are constrained to hold that the defendant and the property are entirely unaffected by the act of the legislature of South Carolina of 1841. The trust in this State remains over the property, precisely as the law fixed it in South Carolina, when the defendant removed to this State. If the defendant does not choose to execute it, we know of no principle by which either the executor or the next of kin of Thomas Finley can here claim the property by virtue of the act above mentioned.

Our conclusions, then, are:

1. That Ann Finley took a vested remainder in the bequest made to her by the will of Thomas Finley.

2. That the delivery of the property by the executor to the defendant, as husband of the legatee, with the knowledge and assent of Jane Finley, was a divestiture of his legal title, and the same vested in the defendant.

3. That the act of the legislature of South Carolina of 1841 had no effect whatever upon this property, or upon the defendant; nor did it create any rights in favor of the plaintiff, or of the distributees or next of kin of Thomas Finley, in respect to this property; nor can it do so as long as it remains in this State.

4. Even if it acted upon the property, it could not restore the legal title of the plaintiff, but would cast it upon the next of kin of the said Thomas, dec'd.

From these conclusions, it follows that the court erred in refusing the first charge asked by the plaintiff, and in the first charge given. It also follows that, in refusing the second charge asked by the plaintiff, there was no error.

Although the conclusions which we have above expressed are directly against the plaintiff's right to recover on the case made by the record, yet we cannot know that the case will be same on another trial; and as errors intervened on the trial below, we feel bound to reverse and remand the cause, which is accordingly done.