# Hemphill *v.* Moody, Adm'r.

### *Settlement of Estate in Probate Court.*

1. *Will; construed.*—The testator, who seems to have owned quite a large estate, both real and personal, commenced the preparation of his will on the 2d day of February, 1838, and on that day inserted a clause by which he gave to his wife Sarah certain tracts of land, and stock, provisions, and "all my negroes, both male and female, with the following restrictions, that is to say : That as my children become of age or marry, they are to have two grown negroes each, and as many more as my wife may think proper to give. I mean, when I say stock and furniture of all kinds, horses, hogs, cows, carriages, wagons, plantation tools, and everything as it is now—all during her life or widowhood; but if she should marry or die, then and in that case, it is my will that all the property I have left her should be sold." This clause then forbids the negroes being sold separately, &c., and continues, "and this [I] enjoin on my beloved wife, in case she does not [marry], and, in case she marries, she is to have ten thousand dollars, to be paid her by my executors, to do as she pleases with." The will was not completed on that day, and, three days afterwards, February 5th, 1838, the testator added this clause : "Being still in my proper senses, and on a further consideration of all the matters and things, I have thought proper to alter a part of the first part of my will—that is, that in case my beloved wife never marries, I wish for her to have five thousand dollars' worth of property left her her life time, or widowhood, she having choice of it, to be hers forever, to do as she may think proper with. And, further, by Mr. Aaron Ready, putting in what I have given him heretofore, and his having rendered services which the others could not do, I give him, extra, two thousand dollars. Now, in explanation of this will, as it is done just on my starting to New York, and in a hurry, my will is that the five thousand dollars may be taken out of what I give my beloved wife, and the two thousand dollars extra, which I give to Aaron Ready." On the same day, the will was duly executed and attested.

Testator died in the year 1840, and his will was duly probated the same year. Aaron Ready and one Banks qualified and acted as executors until the year 1852, when both died. They made several partial settlements, and the estate was finally settled by an administrator *de bonis non*, in 1863, except as to the reversionary interest in the property given to Mrs. Sims. She died in the year 1874, without having married again. The appellee was appointed administrator *de bonis non*, and, within less than three years after Mrs. Sims' death, paid the amount of the legacy to Ready to his personal representatives.

*Held :* 1. The clause of February 5th must be treated and construed as a codicil to that part of the will written before that time, but not as revoking or abrogating the first clause further than necessary to give effect to its terms.  2. The bequest to Ready was demandable after the expiration of eighteen months from the probate of the will, and not postponed until the death of Mrs. S., and, having been allowed to remain unpaid for more than twenty years, became a stale demand, which the administrator *de bonis non* paid on his own wrong, and for which he is not entitled to credit in his settlement.

APPEAL from Tuskaloosa Probate Court.

This was an appeal from a decree on final settlement of the estate of Edward Sims, by the appellee, Frank S. Moody,

administrator *de bonis non.* The principal question involved was the rightfulness of a payment made in the year 1874 by the administrator *de bonis non*, of a legacy given by Sims' will to one Ready. The provisions of the will are fully stated in the opinion. Testator died in the year 1840, and his will was duly probated in the same year. Ready and one Banks qualified and acted executors until 1852, when both died. They made several partial settlements, and the estate was finally settled by an administrator *de bonis non* in 1863, except as to the reversionary interest in the property given Mrs. Sims. She died in the year 1874, without having married again. Appellee was appointed administrator *de bonis non*, and within less than three years after Mrs. Sims' death, paid the Ready legacy to his personal representative, and the Probate Court allowed the same as a rightful payment by the administrator ; and from that decree this appeal is prosecuted.

B. B. LEWIS, for appellant.—The will admits of no other construction than that the two thousand dollars left Aaron Ready was a pecuniary demonstrative legacy.—33 Ala. 85 ; 42 Ala. 16 ; 47 Ala. 554 ; 4 Harris, 281. The law looks with favor on such legacies, and they have a prior right to the fund out of which it is directed to be paid, as against all other claims except those of creditors.—Redfield on Wills, pp. 462-469, §§ 10, 18. At the same time and in the same clause of the will, testator gives his wife $5,000, to do with as she thinks proper, and, to do this, he alters a part of the first part of his will, and says these legacies are to be taken out of what I give my beloved wife. The first part of his will had given a life estate to his wife in certain property. When could she take this property out? Certainly as soon as it was found it would not be wanted to satisfy the demands of creditors ; and Ready could at the same time have demanded and recovered his legacy, given in the same clause. A demonstrative legacy is a charge upon the property out of which it is to be raised, and will be raised as soon as practicable, unless made payable in the future by the terms of the will. *Fry v. Fry*, 7 Paige. In pecuniary bequests to individuals, without specifying the periods when the money is to be received, it is payable at the end of a year, in England, and at the end of eighteen months in Alabama, next after the testator's death.—Roper on Legacies, 552 ; 2 Williams on Exr's, 958. Pecuniary legacies payable generally, are regarded as due at the expiration of eighteen months after the death of the testator.—6 Porter, 518 ; 13 Ala. 557 ; 1 Edwards' Ch. 187 ; Phillips on Evidence, vol. 1, 684. After the lapse of eighteen months, twenty years are sufficient to raise

presumption of payment of the legacy.—40 Ala. 171 ; *Austin v. Jordan*, 35 Ala. ——; 1 Johnson Ch. 46 ; 4 Washington C. C. 639 ; 2 Vesey, jr. 272 ; 1 Hall, 594. The administrator is not allowed to pay a claim he could have resisted.—32 Ala. 245.

WATTS & SONS, and FRANK H. MOODY, *contra.*—In construing a will, effect must be given, if possible, to the whole will, and it must be construed so that no legacy will encroach on any other ; and greater latitude of construction is allowed when, as in this case, the will was evidently drawn by an unskilful, inartificial hand.—5 Ala. 148; 26 Ala. 726; 27 Ala. 127. The payment of the legacy, before the widow's death, would have encroached upon her right ; and, consequently, the payment was postponed until her death. But even if the court should doubt as to what is the proper construction of this will, still it must decide in favor of the appellee ; for the appellant and all the legatees, in construing the will immediately after the death of the testator, united with Ready in construing the will so as to make his legacy payable only after the death of the widow. The concurrence of all the legatees in this construction, united with his own convictions, caused Ready not to claim his legacy. The case of *Colbert v. Daniel*, 32 Ala. 323, is conclusive of this case. This construction, adopted by the original executors, upon conference with the legatees themselves, was acted on by Ready, and by those who followed him in the administration. For two generations no one doubted that such was the right construction ; and under that construction the parties acted, and rights honestly accrued. This, then, became the prescriptive interpretation of the will, and all parties to it are bound by it. No court will unsettle such a construction, and change it, by a technical exposition of this part of the will, even if the court should incline to think that possibly the technicality was against the administrator. But even if this construction of the will be wrong, it does not follow that the payment of the legacy was improperly paid. The several executors and administrators held this property, after the death of the widow, under an express trust, against which the statute of limitations does not run.—32 Ala. 314 ; 33 Ala. 57. The statute of limitations is not applicable to legacies.—Code of 1876, §§ 3223-3231 ; 40 Ala. 171 ; 2 Watts, 161. Finally, if there was a limitation, the administrator could not be held responsible for refusing to defeat the admitted will of the testator by setting up the technical plea. An executor may refuse to plead the statute of limitations. 9 Ala. 502 ; 20 Ala. 147. And, by analogy, he may refuse to

[Hemphill v. Moody, Adm'r.]

plead a prescriptive limitation. The two species of limitation are founded on the same theory, have the same object in view, and their operation and effect are governed by the same general principles. They are both intended to produce repose, and are both based on the presumption of payment. 8 Porter, 211; 46 Ala. 538.

STONE, J.—Rules by which wills are construed are well defined. The several clauses must be construed together, as constituting one instrument; the construction of one clause is frequently aided by consulting another; in case of repugnancy, real or apparent, the general intent is to be carried out, rather than the special; the intention of the testator, if lawful, to be gathered from the language of the will, is to be carried into effect; and, in case of irreconcilable conflict between two clauses, the last is to prevail, as being the latest expression of the testator's will. It is upon this last principle that codicils, as far as they express an intention different from the will, are to prevail. But they displace and supersede the will, only to the extent expressed, or to the extent the two can not stand and be executed together. The will and codicil are one instrument for purposes of construction, and must be read as if they were executed at one and the same time, except that clauses in the will that are expressly revoked in the codicil, and clauses that are irreconcilably repugnant to provisions in the codicil, must be treated as if stricken out. This is the purpose—this the office of the codicil.—*Hitchcock v. U. S. Bank of Penn.* 7 Ala. 386; *Mason v. Smith,* 49 Ala. 71; *Hunter v. Green,* 22 Ala. 329; 1 Jar. on Wills, 411.

The question, in the present case, arises on the construction of Edward Sims' will. The clause is that which gives to Aaron Ready a pecuniary legacy of two thousand dollars. If the payment of that legacy was postponed, by the terms of the will, until after the death of Mrs. Sims, widow and relict of testator, then there can be no question that Moody, the administrator, was rightly allowed a credit for its payment. Mrs. Sims died in 1874, and the payment was made in less than three years afterwards; probably less than two. It is manifest that the period necessary to perfect a bar of a pecuniary legacy, is much longer than that. On the other hand, it is contended by appellant that the provisions of the will do not postpone the payment of this legacy, and that, consequently, it was due and demandable at the end of eighteen months after the probate of the will. The will was probated in 1840—more than thirty-three years before the death of Mrs. Sims. Aaron Ready, the legatee, was one of

(33)

[Hemphill v. Moody, Adm'r.]

the executors of the will, and acted in that capacity until his death in 1852. Two presumptions are claimed as barring this legacy, demanded and paid, as it was, after 1874. First, that Ready, being executor for eleven or twelve years, and having assets in his hands, is presumed to have paid himself. Second, that twenty, even more than thirty years had elapsed since the legacy was demandable, and the law presumes its payment. If this legacy was due at the end of eighteen months after the will was probated, then we do not hesitate to declare that the claim was barred by lapse of time—conclusively barred—and Mr. Moody, the administrator, paid it in his own wrong.—*Austin v. Jordan*, 35 Ala. 642 ; *Pickering v. Lord Stamford*, 2 Ves. jr. 272, 280 ; *Portlock v. Gardner*, 1 Hare, 594. See, also, *Hallett v. Allen*, 13 Ala. 554 ; *Marsh v. Haque*, 1 Edw. Ch. 174 ; *Ellison v. Moffatt*, 1 Johns. Ch. 46 ; *Wisner v. Barnett*, 4 Wash. Cir. Ct. 631 ; *Barnet v. Torrence*, 23 Ala. 463. This case, then, resolves itself into the single inquiry, when was the Ready legacy due and demandable ?

The will of Mr. Sims is inartificially drawn. Its preparation was commenced February 2d, 1838, and on that day he inserted this clause : " I give unto my beloved wife, Sarah Sims, the tract of land where I now live, with the one on Rum Creek, joining Mother Banks, with all the furniture and stock of all kinds, provisions, and all my negroes, both male and female, with the following restrictions—that is to say : that as my children become of age or marry, they are to have two grown negroes each, say a man and a woman, and as many more as she, my wife, may think proper to give. I mean, when I say stock and furniture of all kinds, horses, cows, hogs, carriages, wagons, carts, plantation tools, and everything as it is now, all during her lifetime or widowhood. But if she should marry or die, then, and in that case, it is my will that all the property I have left her should be sold on one, two and three years credit, with interest after one year, except the negroes ; and they are to be sold at private sale, by my executors, to those that they are willing to go to, and no others, regardless of prices, and not to be parted from their husbands and wives and children in no event whatever ; and this [I] enjoin on my beloved wife, in case she does not [marry], and in case she marries, she is to have ten thousand dollars paid her by my executors, to do as she pleases with." This will was not completed or signed on that day. Three days afterwards—February 5th, 1838—testator added this clause : " Being still in my proper senses, and on a further consideration of all the matters and things, I have thought proper to alter a part of the first part of my

[Hemphill v. Moody, Adm'r.]

will—that is, in case my beloved wife never marries, I wish for her to have five thousand dollars' worth of property left her her lifetime or widowhood, she having the choice of it, to be hers forever, to do. as she may think proper with. And, further, by Mr. Aaron Ready, putting in what I have given him heretofore, and his having rendered services which the others could not do, I give him, extra, two thousand dollars. Now, in explanation of this will, as it is done just on my starting to New York, and in a hurry, my will is that the five thousand dollars may be taken out of what I give my beloved wife, and the two thousand dollars extra, which I give Aaron Ready."

The clause of February 5th, copied above, must be treated and construed as a codicil to that part of the will which was written on the 2d. Its expressed object was "to alter a part of the first part of his will." While, under the rules of construction above declared, it must not be construed as revoking or abrogating the first clause, further than is necessary to give it effect according to its terms, yet, being the latest expression of testator's will, it necessarily revokes all previous testamentary disposition with which it is incompatible. In the original bequest to Mrs. Sarah Sims, testator had incorporated restrictions. In the latter expression, he made alterations. In the first, he gave her an estate, during her life or widowhood, in certain described property; and gave her only a life estate. In the last, he gave her an absolute title to five thousand dollars worth of the same property, to be selected by her; but to be hers in absolute right, only in the event she did not again marry. She certainly had the right to select the property during her life; and yet, until her death, it could not be known she would never marry. Selecting the five thousand dollars worth, her right in fee did not attach absolutely until she died testator's widow. In this clause, testator increased the provision made for his widow, by converting into a fee, contingent or defeasible, that which was before a life-time at most. We think it was a defeasible fee—first, because the widow must select the property, which she could do only in her lifetime; and, second, because so long as she remained testator's widow, she had the absolute use of the property, with the power of disposition.

So far as the bequest of two thousand dollars to Aaron Ready is concerned, we think it was demandable at the expiration of eighteen months, for the following reasons: First. There is nothing in the will which shows that the payment was to be postponed until the marriage or death of Mrs. Sims. If such had been the intention of the testator,

[Hemphill v. Moody, Adm'r.]

he could easily and doubtless would have so expressed it. Second. If it was intended this legacy should be paid only after the death or marriage of Mrs. Sims, then this was no alteration of the first part of testator's will. In that first part he had only disposed of the life interest, leaving the residuum of the title for after disposition. The construction contended for would be an alteration, not of the first part of the will, but of a later clause, by which disposition was made of the property, after the termination of Mrs. Sims' estate.

The record does not inform us of the quantity of land, number of slaves, or value of the property devised and bequeathed to Mrs. Sims. There are facts suggestive of large value. Two grown negroes, and as many more as the widow might "think proper," were to be given up to each child, as they severally became of age or married. The widow was to have five thousand dollars worth of the property, to be selected by her. In the event she married, she was to have ten thousand dollars in cash, in lieu of the property otherwise given her. Husbands do not usually make increased provision for their wives, contingent on their entering again into matrimonial bonds. Human instincts lead in a different direction. We suppose the provision for Mrs. Sims was liberal; and the inference is not unreasonable that testator supposed and intended that the pecuniary legacy to Ready should be paid out of its increase.

The case of *Colbert v. Daniel*, 32 Ala. 314, has been strongly urged upon us as declaring a rule which will estop applicant from disputing the rightful payment by the administrator of what is known as the Ready legacy. In that case, the executor and the legatees had met together, and had agreed on a construction of the will. The construction was erroneous; but, pursuant to such construction, the executor delivered to the widow certain slaves, as her legacy, which she retained during her life and disposed of by her will. On a proper construction of the will, she was not entitled to the slaves. Subsequent to her death, and to the execution of her will, an attempt was made by one of the legatees to hold the executor responsible for these slaves, as for a devastavit. We held that inasmuch as the complaining legatee was present when the slaves were given off to the widow, under the erroneous construction of the will, and did not then dissent from it, but assented to it, he must stand by the distribution as rightly made. We applied the maxim, *consensus tollit errorem*. To have ruled otherwise would have been to hold the executor responsible for property he had put beyond his control, by the consent of those in adverse

[Hemphill v. Moody, Adm'r.]

interest.   This, it will be perceived, would have been a great hardship upon the executor; and the case is very like one of estoppel.

In the case before us, the facts are essentially different. The Ready legacy was made a charge on the devise and bequest to Mrs. Sims.   As we have intimated above, its payment was probably expected to be made out of the increase and profits to be earned and made by the life estate given to the widow.   She alone would have her portion diminished by its payment; for it was to be taken out of what testator gave his beloved wife.   Consequently, its payment during her lifetime could not possibly affect the other legatees.   It was made no charge on the remainder of the property given to the children, after the termination of the widow's estate, which was, in the main, a life estate.   Under the one construction or the other, the executors would distribute, and did distribute the same property in quantity and value, when they came to make the first distribution before the death of Mrs. Sims.   Consequently, the executors, in turning over to Mrs. Sims her life estate, did not put beyond their control, or part with any property, or interest in property, to which the other legatees had any claim, or by which they could be affected.   Hence, the alleged erroneous construction of the will concerned no one except Ready, the legatee, and Mrs. Sims.   We do not think *Colbert v. Daniel* sheds any light on this case.   The will says the Ready legacy is a charge on the estate given to Mrs. Sims.   We are asked to sanction its payment out of the remainder, which was given to other legatees.   We find no warrant in the will, or in the conduct of the parties, for doing so.

Holding as we do above, that the legacy to Mr. Ready was due and demandable at the end of eighteen months after the probate of the will, the administrator *de bonis non* had no authority to make the payment, and thus make it a charge on the remainder.

Reversed and remanded.